# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Cookie Dough Bliss Franchising, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| KNZ Solutions, LLC, et al., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT

Plaintiff, COOKIE DOUGH BLISS FRANCHISING, LLC ("Plaintiff" or "Franchisor") by and through its attorneys, Nixon Peabody LLP, for its Complaint against KNZ Solutions, LLC, KIRSTIE GEYER and ZACH NORBUT (collectively, "Franchisee" or "Defendants"), alleges the following:

## PRELIMINARY STATEMENT

1. This is a complaint seeking a temporary restraining order against KNZ Solutions, LLC, KIRSTIE GEYER and ZACH NORBUT in aid of arbitration.

2. Franchisor and Franchisee entered a Franchise Agreement, dated February 8, 2020, to operate a business that sells cookie dough known as Cookie Dough Bliss.

3. Pursuant to the terms of the Franchise Agreement (attached hereto as Exhibit 1), the parties agreed to arbitrate all disputes between them. However, the Franchise Agreement expressly allows for a court filing and injunctive relief in circumstances as detailed here. See Ex. 1, §XXV.D (CBDF0049), §XV.J (CDBF0042), and Attachment E, §1.7 (CDBF0072).

4. On May 19, 2023, Franchisee, via counsel, sent Franchisor a Notice of Termination purporting to terminate the Franchise Agreement.

5. However, the circumstances here require certain issues to be initially addressed through injunctive relief with this Court. For instance, the Franchise Agreement contains a covenant not to compete with Franchisor. Ex. 1, §XV.C (CDBF0041) and Attachment E, §1.3 (CDBF0071).

6. In compete disregard of the terms of the Franchise Agreement, and other legal restrictions, Franchisor is continuing to compete and further operate under the Franchisor's trademark, including holding itself out to be a "Cookie Dough Bliss' franchisee, operating a website which lists its location as a "Cookie Dough Bliss" location, using Franchisor's property, confidential information and trade secrets, and selling Franchisor's branded goods.

7. Moreover, upon information and belief, Franchisee has colluded with two other franchisees in Washington and Minnesota to steal Franchisor's confidential information and trade secrets and start a competing cookie dough business.

8. Having improperly terminated the Franchise Agreement, Franchisee has no rights under the Franchise Agreement to continue to operate using Franchisor's confidential information, trade secrets, recipe, or marks, and further is barred from engaging in a competing enterprise. Ex. 1, §VI.B.9 (CDBF0023), §XIV.B (CDBF0039), §XIV.E (CDBF0040), §XIV.B (CDBF0041), Attachment E, §1.3 (CDBF0071) and Attachment F, §§1.4-1.6.

9. Protection of Plaintiff's trade secrets, including the recipes, formulas, and processes for making the company's cookie dough, is essential for the continuation of Franchisor's business and profitability. See Ex. 1, §V.P (CDBF0021) and Attachment F (CDBF0075).

10. Pursuant to the terms of the Franchise Agreement, Franchisor is permitted to seek emergency and temporary relief in aid of arbitration in order to prevent ongoing and future

irreparable harm while the parties arbitrate their claims. Id., § XV.J (CDBF0042) and Attachment E, §1.7 (CDBF0072).

11. Without a temporary restraining order, Franchisor will suffer harm including in the form of client conversion and brand dilution rendering long term calculation of damages almost impossible.

## THE PARTIES

12. Plaintiff, Cookie Dough Bliss Franchising, LLC ("Plaintiff" or "Franchisor") was a North Carolina Limited Liability Company, having its principal place of business at 8415 Pit Stop Court NW, Concord, NC 28027.

13. Defendant, KNZ Solutions, LLC ("Franchisee") is an Illinois Limited Liability Company, having its principal place of business at 1344 S. 14th Street, Unit D1, St. Charles, IL 60174.

14. Upon information or belief, Defendant, KIRSTIE GEYER ("Geyer") is an individual residing in Kane County, Illinois with a work address of 227 South 3rd St., #109, Geneva, IL 60134.

15. Upon information or belief, Defendant, ZACH NORBUT ("Norbut") is an individual residing in Kane County, Illinois with a work address of 227 South 3rd St., #109, Geneva, IL 60134.

16. Upon information and belief, Geyer and Norbut are the only members of Franchisee.

17. Franchisee, Geyer and Norbut are collectively referred to herein as Defendants.

**JURISDICTION AND VENUE**

18.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based on the Lanham Act, 15 U.S.C. § 1125, et. seq. and The Defend Trade Secret Act of 2016. 18 U.S.C. § 1836(b)(1), et. seq. and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a). The court also has diversity jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff is diverse from the Defendants and the amount in controversy exceeds $75,000.

19.     The venue for this action is properly founded in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred therein because Defendants reside and conduct business in the district.

20.     Defendants are subject to the personal jurisdiction of this Court because each of them conducts business and resides in this State and in this district.

**BACKGROUND**

**A.     Franchise Agreement**

21.     Franchisor and Franchisee entered a Franchise Agreement, dated February 8, 2020 ("Franchise Agreement"). *Exhibit "1"*.

22.     Pursuant to the Franchise Agreement, the parties entered into an agreement whereby Franchisor granted to Franchisee the non-exclusive and personal license and right to develop, own and operate a franchised business in strict conformity with Franchisor's quality control standards and specifications for the marketing, sale, offering, and providing of cookie dough, cookies, or other cookie related products for sale to the general public.

23.     Since entering the Franchise Agreement, Franchisee has failed to meet its obligations thereunder.

24. Despite its failure to meet its obligations, Franchisee has now improperly sought to terminate the Franchise Agreement without cause.

25. Despite its termination of the Franchise Agreement without cause, Franchisee continues to operate the franchised business, including the unauthorized use of Franchisor's confidential information, trade secrets, and marks. See Ex. 1, §VI.B.9 (CDBF0023), §XIV.B (CDBF0039), §XIV.E (CDBF0040), Attachment E, §1.3 (CDBF0071) and Attachment F, §§1.4-1.6.

26. Franchisee's continued operations also constitute a breach of Franchisee's and Defendants' covenant not to compete with Franchisor. Ex. 1, §XV.C (CDBF0041) and Attachment E, §1.3 (CDBF0071).

27. In order to prevent continuing harm to Franchisee for which money could not adequately compensate, Franchisee must be prohibited from continuing its violations of the Franchise Agreement as well as federal and state law.

**B.    Defendants' Breaches**

28. Defendants have repeatedly, deliberately and substantially breached the Franchise Agreement in the following ways:

    (i) Failure to remit promptly when due any monies due to Franchisor including Royalties (*See* XIII.B(1) of Franchise Agreement);

    (ii) Failure to submit financial information or other reports required by Franchisor under the Agreements including monthly financial sales report from point of sales system (*See* XIII.B(1) of Franchise Agreement);

    (iii) Failure to adequately promote the Franchised Business as provided in the Manual or otherwise in writing (*See* XIII.B(4) of Franchise Agreement);

    (iv) Failure to maintain and submit to Franchisor all reports required pursuant to Section IX of the Agreements, including financial statements, weekly, monthly and other reports of Gross Sales and copies of tax returns (*See* XIII.B(5) of Franchise Agreement);

(v) Failure on three (3) or more separate occasions to: (i) submit when due financial statements, reports or other data, information or supporting records; (ii) to pay when due the Royalty Fees; (iii) to pay when due Advertising Contributions; (iv) to pay when due amounts for purchases from Franchisor or its affiliates or other payments due to Franchisor, or amounts due to suppliers or vendors approved or designated by Franchisor; and/or (v) otherwise fails to comply with this Agreement, whether or not such failure to comply is corrected after notice is delivered to Franchisee (*See* XIII.B(6) of Franchise Agreement);

(vi) Failure to maintain Franchisor's quality control standards with respect to its use of signage and other uses of the Marks (*See* XIII.B(7) of Franchise Agreement); and

(vii) Failure to obtain the prior written approval of Franchisor of any and all promotional and marketing programs, plans and materials in what form used by Franchisee in connection with its promotion of the Franchised Business or otherwise fails to comply with Franchisor's policies and procedures with respect to advertising, marketing or promotion (*See* XIII.B(9) of Franchise Agreement).

**C.     Plaintiff's Trade Secrets and Trademarks**

29.     Maintenance of Plaintiff's trade secrets, including the recipes, formulas, and processes for making the edible cookie dough, is essential for the continuation of Franchisor's business and profitability.  See Ex. 1, §V.P (CDBF0021).

30.     In recognition of the importance of maintaining this secrecy, Franchisor takes considerable efforts to ensure that this information remains confidential and protected.

31.     The Franchise Agreement requires the Franchisee to follow a specific system to, *inter alia*, "[p]rotect the Marks and the System, and Franchisor's Confidential Information and Trade Secrets, reputation and good will." Ex. 1, § V.A.3 (CDBF0016).

32.     Further, in the Franchise Agreement, "Franchisee acknowledges and agrees that Franchisor has developed certain products, recipes, services, operational systems and management techniques [. . .] for use in the operation of the Franchised Business which **are all highly**

6

**confidential and constitute Confidential Information or Trade Secrets of Franchisor**." Id., § V.P. (emphasis added) (CDBF0021).

33. Franchisee is required to limit access to Franchisor's trade secrets "to employees who have a demonstrable and valid need to know the information contained therein to perform their duties. Id. § VII.G (CDBF0024) (relating to Franchisor's Manual).

34. Further, Section VIII of the Franchise Agreement provides the requirements related to proprietary information generally. Id. § VIII (CDBF0024-26).

35. Specifically, Section VIII.A. provides:

> The parties expressly understand, acknowledge and agree that the relationship established between Franchisor and Franchisee by this Agreement is one of confidence and trust, and that as a result, Franchisor will be disclosing and transmitting to Franchisee certain proprietary information of Franchisor constituting Trade Secrets or Confidential Information, including management and training techniques, operational, accounting and quality control procedures, programs and other methods developed by Franchisor through and in the System which, for purposes of this Agreement, are owned or utilized by Franchisor and which are necessary and essential to the operation of the Franchised Business, without which information Franchisee could not efficiently and effectively operate the same.

36. Franchisee is prohibited from publishing, disclosing, transferring, releasing, or divulging "any Trade Secrets during the term of [the Franchise Agreement] and for so long afterwards as the information or data remain Trade Secrets." Id. § VIII.B.1.ii (CDBF0025).

37. All of Franchisor's recipes, formulas, methods, and processes remain Trade Secrets, protected by Franchisor, and not available to the general public.

38. Franchisor also protects its trade secrets from disclosure by also requiring Franchisee to enter into a confidentiality agreement with its manager. Id.,§ VIII.B.2.

39. Geyer and Norbut, both individually (defined as a Second Party in the Franchise Agreement), and as the two members of KNZ, further agreed to and signed a Noncompetition

7

Agreement and a Confidentiality Agreement as part of the Franchise Agreement, each of which further confirmed their covenants and obligations (a) as to Franchisor's Confidential Information, Marks and Trade Secrets and (b) not to compete with Franchisor. Ex. 1, Attachment E (CDBF0069) and Attachment F (CDBF0074).

**D.    Franchisee's Purported Termination of Franchise Agreement**

40.    On or about May 19, 2023, Franchisor, through counsel, received correspondence from Franchisee's counsel, Stephanie Blumstein of A.Y. Strauss, purporting to be a Notice of Termination pursuant to section XIII.C of the Franchise Agreement. (the "Termination Notice"). *Termination Notice annexed hereto as Exhibit "2".*

41.    The Franchise Agreement permits termination by Franchisee only in the event "Franchisee and its Principals are fully complying with each and every term of [the Franchise Agreement] and Franchisor materially breaches substantive and material obligations on the part of the Franchisor as set forth and defined in [the Franchise Agreement." Ex. 1 § XIII.C (CDBF0039).

42.    Franchisee is in breach and has not fully complied with the foregoing and other terms of the Franchise Agreement.

43.    The Franchise Agreement also provides that the "termination date must be at least ten (10) days after Franchisor's receipt of Franchisee's notice of termination. Id.

44.    The Termination Notice did not set forth a termination date.

45.    The Franchise Agreement also provides that "Franchisee's termination of this Agreement for any reason other than set forth herein or without notice will be deemed a termination by Franchisee without cause. Id.

46. Franchisee's Termination Notice does not conform to the requirements of the Franchise Agreement as to the reason for termination and failure to provide 10 days' notice of the termination.

47. Franchisee's Termination Notice constitutes a termination without cause.

**E.     Franchisee's Obligations Upon Termination**

48. Section XIV of the Franchise Agreement sets forth Franchisee's obligations upon termination of the Franchise Agreement.

49. Among Franchisee's other obligations upon termination of the Franchise Agreement, "Franchisee shall immediately cease to operate the Franchised Business and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a franchisee or franchisee of Franchisor." Ex. 1 § XIV.A (CDBF0039).

50. Also, "Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any equipment, format, confidential methods, customer database, programs, literature, procedures and techniques associated with the System, the name "Cookie Dough Bliss" and any other Marks.  Ex. 1 § XIV.B (CDBF0039).

**F.     Defendants' Violation of Covenant Not to Compete**

51. Franchisee, and Geyer and Norbut individually, have entered a covenant not to compete with Franchisor during the term of the Franchise Agreement and for a period of 24 months following termination of the Franchise Agreement for any reason.  Ex. 1 §, XV.C (CDBF0041) and Attachment E, § 1.3 (CDBF0071).

52. Defendants have coordinated with at least two other franchisees of Franchisor ("Other Franchisees") to simultaneously terminate their respective Franchise Agreements and, on

information and belief, band together to form a competing enterprise using Franchisor's trade secrets and other confidential information.

53. Notably, Franchisee and the Other Franchisees are acting entirely in concert as seen in the Termination Notice sent by their counsel, a New Jersey Attorney. The Termination Notice is provided by counsel on behalf of Franchisee and the Other Franchisees, with no distinction being made between any of the respective franchisees.

54. Franchisee and Other Franchisees are located throughout the country, in Illinois, Minnesota, and Washington. Their counsel is located in New Jersey.

55. Franchisee and the Other Franchisees are clearly working in concert to undermine Franchisor, its Confidential Information, and its brand.

56. In addition to their breaches of the Franchise Agreement, based on the acts and misconduct described herein, Defendants also continue to violate state and federal law including the Lanham Act, 15 U.S.C. § 1125, et. seq., the Defend Trade Secret Act of 2016, 18 U.S.C. § 1836(b)(1), et. seq., Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, Section 2 of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 and the Illinois Trade Secrets Act, 765 ILCS 1065, et seq.

**G.     Harm to Franchisor and Need for TRO**

57. If the Court does not grant this temporary restraining order, Franchisee and the Other Franchisees will continue to collude and cause irreparable and incalculable harm to Franchisor, not only in dilution of the brand and its reputation, but in conversion of customers for an improperly competing business.

58. Defendants have acknowledged that a violation of the covenants not to compete "would result in immediate and irreparable injury to Franchisor for which no adequate remedy at

law will be available" and "consent[ed] to the entry of an injunction prohibiting any conduct by Franchisee in violation of the terms of the covenant not to compete set forth in [the Franchise Agreement]." Ex. 1 § XV.J (CDBF0042) and see Attachment E, § 1.7 (CDBF0072).

59. Further, "Franchisee expressly agree[d] that it may be presumed conclusively that any violation of the terms of said covenants not to compete was accomplished by and through Franchisee's unlawful utilization of Franchisor's Confidential Information and Trade Secrets." Ex. 1 § XV.J (CDBF0042). Geyer and Norbut made similar affirmations and agreements. Ex. 1 § Attachment E, § 1.7 (CDBF0072).

60. Franchisor urgently needs this relief to be granted on an emergency basis.

61. Upon information and belief, Defendants, in coordination with the Other Franchisees, have specifically timed their actions to coincide with the Memorial Day weekend to cause as much harm as possible to Franchisor.

62. Memorial Day weekend is a major sales weekend for Plaintiff's edible cookie dough.

63. If Franchisee is permitted to operate, in violation of the clear requirements of the Franchise Agreement, it will not be possible for Franchisor to be made whole.

64. Franchisor's damages will not be limited to lost sales over the holiday weekend.

65. Without the immediate issuance of the temporary restraining order, Franchisor will suffer harm in the form of client conversion and brand dilution rendering long term calculation of damages almost impossible.

66. Having improperly terminated the Franchise Agreement, Franchisee has no rights under the agreement to continue to operate using Franchisor's confidential information, trade secrets, or marks, and further has no rights to engage in a competing enterprise.

**H.     Arbitration Agreement**

67.     The Franchise Agreement provides, *inter alia*:

> [t]he parties agree that all controversies, disputes or claims between Franchisor and its Affiliates, or any of them, on the one hand, and Franchisee or any Affiliate of Franchisee and any of their respective officers, directors, managers, agents, representatives, employees, successors and assigns, on the other hand, arising out of or relating to (i) [the Franchise Agreement] or any other agreement between Franchisor and Franchisee, (ii) the relationship between Franchisor and Franchisee, (iii) the scope and validity of [the Franchise Agreement] or any other agreement between Franchisor and Franchisee or any provision of such agreements [. . .] or (iv) the Franchised Business [. . .] shall be submitted for binding arbitration [. . .].

Ex. 1, § XXVI (CDBF0049-50).

68.     Notwithstanding the agreement to arbitrate all claims, the Franchise Agreement allows that "Franchisor and Franchisee each have the right in a proper case to bring an action to obtain a temporary restraining order or temporary preliminary injunctive relief from a court of competent jurisdiction, provided, that the dispute must be contemporaneously submitted for arbitration on the merits as provided in [the Franchise Agreement]." Ex. 1, § XXVI (CDBF0050) and *see* Attachment D, §8.x. (CDBF0068) and Attachment E, §1.7.

## AS AND FOR A FIRST CAUSE OF ACTION
(TEMPORARY RESTRAINING ORDER IN SUPPORT OF ARBITRATION)

69.     Plaintiff repeats and realleges the allegations above as if fully set forth herein.

70.     Defendants and Franchisor are parties to a valid Franchise Agreement pursuant to which claims are to be submitted to binding arbitration with an allowance for injunctive relief in this Court.

71.     Franchisor has complied with its obligations in the Franchise Agreement.

72.     Defendants have breached the Franchise Agreement and Plaintiff has been harmed by such breaches.

73. Defendants have breached the Franchise Agreement by, *inter alia*, failing to pay to Plaintiff royalties due pursuant to the Franchise Agreement and failing to provide financial documentation and information as required by the Franchise Agreement.

74. Defendants have further breached the Franchise Agreement by terminating the Franchise Agreement without cause as set forth above.

75. Defendants further have breached the Franchise Agreement by continuing to use Franchisor's confidential information, trade secrets, and marks after terminating the Franchise Agreement. See Ex. 1, §VI.B.9 (CDBF0023), §XIV.B (CDBF0039), §XIV.E (CDBF0040), and Attachment F, §§1.4-1.6.

76. Defendants further have breached the Franchise Agreement by engaging in competing business in violation of the non-competition covenants set forth in the Franchise Agreement. Id., § XV.C (CDBF0041) and Attachment E, § 1.3 (CDBF0071).

77. In addition to their breaches of the Franchise Agreement, based on the acts and misconduct described herein, Defendants also continue to violate state and federal law including the Lanham Act, 15 U.S.C. § 1125, et. seq., the Defend Trade Secret Act of 2016. 18 U.S.C. § 1836(b)(1), et. seq., Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, Section 2 of the Illinois Uniform Deceptive Trade Practices Act , 815 ILCS 510/2 and the Illinois Trade Secrets Act, 765 ILCS 1065, et seq.

78. Plaintiff will suffer irreparable harm in the event no temporary restraining order is issued.

79. Plaintiff will suffer not only lost profits, but customer conversion such that it is impossible to calculate the long terms losses that would be suffered.

80. By reason of the aforesaid, there is no adequate remedy at law to make Plaintiff whole in the event a temporary restraining order is not issued.

81. By reason of the aforesaid, Plaintiff is entitled to a temporary restraining order pursuant to Fed. R. Civ. Proc. 65, prohibiting Defendants from taking any actions in violation of the Franchise Agreement, including the use of Plaintiff's confidential information, trade secrets, and marks, and from engaging in competitive activities prohibited by the covenants set forth in the Franchise Agreement.

WHEREFORE, respectfully requests that this Court enter judgment against Defendants as follows:

1. Granting an injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, 11 U.S.C. § 1125, 18 U.S.C. §§ 1836, 765 ILCS § 1065, and the common law preliminarily restraining and enjoining Franchisee and Defendants, and their officers, agents, employees, and attorneys, and all those persons or entities acting in concert or participation with them from:

   a. Using, exploiting, or displaying the Franchisor's trademarks including COOKIE DOUGH BLISS in any way and for any purpose, including for purposes of advertising or promoting any of Franchisor's services or goods, including any product manufactured, sold or distributed by it, now or in the future without Franchisor's written consent or permission.

   b. Using or displaying the trademark COOKIE DOUGH BLISS on any website, or any other method to distribute information without Franchisor's written consent or permission.

    c. Using or exploiting, or displaying the Franchisor's trade secrets, including the recipes, formulas, and processes for making the Franchisor's products including the cookie dough.

    d. Ordering Defendants to file with this Court and to serve on Plaintiff within ten (10) days after entry of the injunction a written report under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

2. Awarding Plaintiff its costs, attorney's fees, and expenses to the full extent provided for under federal or state law.

3. Awarding Plaintiff such additional and further relief as the Court deems just and proper.

Dated: May 25, 2023

NIXON PEABODY, LLP

s/ John Ruskusky_____
John Ruskusky, Esq. (#6256605)
Katherine F. Letcher, Esq. (#6317422)
70 West Madison, Suite 5200
Chicago, IL 60602
(312) 977-4400
Jruskusky@nixonpeabody.com
Kletcher@nixonpeabody.com

and

                    HELBRAUN & LEVEY LLP

                    Hamutal G. Lieberman, Esq. (*pro hac vice to be submitted*)
                    Eric Dawson, Esq. (*pro hac vice to be submitted*)
                    40 Fulton Street, 28th Floor
                    New York, NY 10038
                    (212) 219-1193
                    Hamutal.lieberman@helbraunlevey.com
                    Eric.dawson@helbraunlevey.com